**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 CR 476 |
| v. | ) | |
| | ) | Judge Jorge Alonso |
| DAVID ODOM, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |
| KIMBERLY ODOM, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this ancillary proceeding instituted under Federal Rule of Criminal Procedure 32.2(c) and 21 U.S.C. § 853(n), Kimberly Odom asserts an interest in real property that is subject to a preliminary order of forfeiture, following the plea agreement and criminal conviction of Mrs. Odom's husband, David Odom. Mrs. Odom and the government have filed cross-motions for summary judgment. For the following reasons, the government's motion is granted, and Mrs. Odom's motion is denied.

## BACKGROUND

The material facts, which appear to be undisputed, are as follows. David and Kimberly Odom purchased a home at 24724 Royal Lytham Drive, in Naperville, Illinois, in 2002. They financed the transaction by obtaining a mortgage loan from the Northern Trust Company ("Northern Trust"). In 2008, they defaulted on the mortgage. Northern Trust initiated foreclosure proceedings, and the Circuit Court of Will County entered a summary judgment of foreclosure against the Odoms on December 1, 2009. Northern Trust purchased the property at a foreclosure

sale on January 26, 2011, for $1,050,000. The Circuit Court of Will County entered an order confirming the sale on February 8, leaving the Odoms facing eviction.

On March 9, 2011, Mr. Odom faxed a letter to Kenneth Shaw, an attorney for Northern Trust, stating that he and Mrs. Odom had $300,000 they could "apply toward [their] mortgage loan" if Northern Trust would "accept that sum to reinstate the loan." (Esmond Decl. Attachment 6, ECF No. 363-2 at 20.) Following further negotiations, on March 23, 2011, the Odoms entered into a contract to purchase the property from Northern Trust for $800,000, and they tendered a cashier's check for $300,000 as earnest money. However, the cashier's check turned out to be counterfeit. On April 15, 2011, Northern Trust's attorney informed Mr. Odom that Northern Trust would proceed with eviction. Mr. Odom responded that he still intended to fulfill his payment obligations under the contract.

Meanwhile, Mr. Odom was meeting with lenders, purportedly to obtain a bridge loan to produce a film called *Season Tickets*, starring Martin Lawrence. After a deal with one lender fell through, Mr. Odom was introduced to representatives of Blue Rider Finance, Inc. ("Blue Rider"). Mr. Odom and his associates represented that, as security for the bridge loan, there were $5 million in an escrow account at a Maryland bank, to be released for payment of various movie production expenses, including repayment of the bridge loan, once certain pre-production expenses had been paid.

After participating in conference calls with Blue Rider representatives to arrange the bridge loan, Mr. Odom informed Northern Trust's attorney on May 4, 2011, that he would be able to pay the full purchase price for the Naperville property within a week. On May 5, 2011, a deed dated

March 16, 2011, indicating that the Will County Sheriff sold the Naperville property at a public sale to Northern Trust and the property had not been redeemed from sale, was recorded.

On May 9, 2011, Blue Rider transferred over $2 million to CityScope Productions, LLC, a business entity owned by Mr. Odom, who had represented to Blue Rider that the bridge loan proceeds would be used to pay pre-production expenses and repaid within forty-five days. Mr. Odom used $821,300 of the Blue Rider loan proceeds to purchase the Naperville property from Northern Trust, in a transaction that closed on May 25, 2011.

When the bridge loan was not repaid within forty-five days as agreed, Blue Rider brought a civil suit in Illinois, among others in California and Michigan, to recover its loan. Mr. Odom's co-defendant, Darryl Clements, obtained $4 million in a separate fraud, and he transferred $2 million to CityScope. In August 2011, Mr. Odom used these funds to negotiate a settlement with Blue Rider, promising to pay the balance owing to Blue Rider within fourteen days. (*See* Plea Agr. at 8, *United States v. Odom*, Case No. 16 CR 192 (D. Md. Mar. 31, 2017).)

In June 2016, Mr. Odom was indicted in the District of Maryland on charges of wire fraud and conspiracy to commit wire fraud, *see* 18 U.S.C. §§ 1343, 1349, for his role in the Blue Rider transaction. In March 2017, he entered into an agreement to plead guilty to conspiracy to commit wire fraud. He admitted in the plea agreement that he "knew, or was willfully blind to" the fact that the $5 million in escrow never existed. (Plea Agr. at 5, *United States v. Odom*, Case No. 16 CR 192 (D. Md. Mar. 31, 2017).) Mr. Odom also acknowledged that, following acceptance of his guilty plea, the court would enter an order of forfeiture, which would include assets "directly traceable to the offense," including the Naperville property, and he agreed to consent to the entry of such an order. (*Id.* ¶¶ 11-12.) He was sentenced to thirty months' imprisonment, and, on October

3

30, 2017, the court entered a preliminary order of forfeiture, which provided for the forfeiture of the Naperville property to the United States up to the amount of $821,000, with any sale proceeds exceeding that amount, after the satisfaction of any liens, outstanding taxes, and expenses, to be paid over to the defendant.

Mrs. Odom challenged the forfeiture by filing a petition asserting an interest in the Naperville property, claiming that she was innocent of any wrongdoing and she and her husband have owned the property in tenancy by the entirety since 2002, long before the occurrence of any of the criminal acts to which Mr. Odom pleaded guilty. Mrs. Odom and the government filed the present cross-motions for summary judgment. In October 2023, the case was transferred to this judicial district, where the Naperville property is located and the claimant resides, and the matter was assigned to this Court.

<u>**ANALYSIS**</u>

"Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its interest in a property to be forfeited" by a criminal defendant. *United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007). Federal Rule of Criminal Procedure 32.2 governs the procedure for proceedings on such petitions, known as "ancillary proceedings." The rule provides that the parties may conduct discovery in accordance with the Federal Rules of Civil Procedure and, following discovery, they may "move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B).

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may

not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

A person convicted of a crime punishable by imprisonment of a year or more "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime. 21 U.S.C. § 853(a)(1). The government's "right, title, and interest" in such property "vests . . . upon the commission of the act giving rise to forfeiture," even if the property is "subsequently transferred to a person other than the defendant." *Id.* § 853(c). To succeed in demonstrating that the Court should amend the order of forfeiture to omit the Naperville property, Mrs. Odom must establish by a preponderance of the evidence that she either (a) "has a legal right, title, or interest in the property" that "was vested in [her] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property," or (b) "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 853(n)(6)(A) & (B). Mrs. Odom asserts an interest in the Naperville property under both prongs of § 853(n)(6).

**(A) Interest in the Property at the Time of the Commission of the Criminal Acts**

Mrs. Odom claims that she and her husband have owned the Naperville property in tenancy by the entirety since 2002. Although they nearly lost the property in foreclosure in 2011, she argues that they redeemed the property from the lender, and therefore she retained her full, undivided interest in the property as a tenant by the entirety, which interest, she argues, is not subject to forfeiture. *See United States v. Lee*, 232 F.3d 556, 560 (7th Cir. 2000); *Marquette Bank v. Heartland Bank & Tr. Co.*, 41 N.E.3d 1007, 1010 (Ill. App. Ct. 2015).

Mrs. Odom is mistaken about what she characterizes as the "redemption" of the Naperville property in 2011. The record shows that Northern Trust foreclosed on the property, purchased it at the ensuing foreclosure sale, and then, after beginning preparations to evict the Odoms, reversed course and agreed to sell it back to them. This was not a "redemption" under the Illinois Mortgage Foreclosure Law.

While it is true that a mortgagor has a right of redemption under 735 ILCS 5/15-1603, neither that right nor any equitable right to redemption survives the judicial confirmation of the sale. *See Wells Fargo Bank, N.A. v. McCluskey*, 999 N.E.2d 321, 330 (Ill. App. Ct. 2013) (citing 735 ILCS 5/15-404); *see also Washington Mut. Bank, FA v. Boyd*, 861 N.E.2d 1041, 1044 (Ill. App. Ct. 2006). A separate statutory "special right to redeem" survives judicial confirmation of a foreclosure sale of residential real estate to the mortgagee for thirty days, if certain conditions are met, *see* 735 ILCS 5/15-1604, but Mrs. Odom does not specifically argue that this provision applies, and even if she made any such argument, it clearly does not apply. The Odoms did not even offer to pay, much less actually tender, the statutorily required amount within the thirty-day period. *See id.* (requiring the redeeming mortgagor to pay to the mortgagee the full "sale price,"

6

as well as interest and any additional costs and expenses incurred by the mortgagee); *see also In re McKenith*, 428 B.R. 462, 464-65 (Bankr. N.D. Ill. 2010) (explaining that section 15-1604 requires the mortgagor to make full payment of the statutorily required amount within the thirty-day period, not "merely propos[e]" a plan for "curing a default"); *Fed. Land Bank of St. Louis v. Droste*, 325 N.E.2d 37, 39 (Ill. App. Ct. 1975) (similarly requiring mortgagor to tender full payment, not merely "offer to pay" it, under now-superseded statutory redemption provision predating the Illinois Mortgage Foreclosure Law, *see* 735 ILCS 5/15-1101 *et seq.*).

For these reasons, it is beyond question that, at the time that the Odoms repurchased the property from Northern Trust in May 2011, they had no interest to "redeem." Their prior interest had been extinguished by the confirmation of sale on February 8, 2011, or, at the very latest, thirty days after that date. In order to prevail in this ancillary proceeding, Mrs. Odom must demonstrate that she had an interest in the Naperville property "at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A); *see* 21 U.S.C. § 853(c). At the time that Mr. Odom defrauded Blue Rider in April and early May 2011, Mrs. Odom had no interest in the Naperville property, which she and Mr. Odom repurchased with the proceeds of Mr. Odom's fraud. Therefore, the Naperville property is subject to forfeiture, and Mrs. Odom has no interest in it that predates Mr. Odom's fraud, so she is not protected by § 853(n)(6)(A). *See United States v. Guerrero*, 37 F.4th 1215, 1219 (7th Cir. 2022).

**(B) Bona Fide Purchase for Value**

Mrs. Odom claims that she is a bona fide purchaser for value because, in August 2011, she and Mr. Odom paid Blue Rider $2 million to settle a civil lawsuit Blue Rider had brought against them. Mrs. Odom does not flesh out this argument with either evidence or authority, and the Court

7

is unable to see how any such payment makes her a bona fide purchaser for value. For one thing, to the extent this is the same lawsuit that Mr. Odom admitted in his plea agreement to settling with $2 million that he obtained from a fraud committed by his co-defendant Clements, Mrs. Odom did not pay "value" to settle the suit. *See In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005) (claimant did not pay value where he merely enforced promissory note given him by the criminal defendant, his father); *see also United States v. 939 Salem St., Lynnfield, Mass.*, 917 F. Supp. 2d 151, 158 (D. Mass. 2013) (citing cases, including *Bryson*, to establish that a claimant is not a bona fide purchaser for value if she makes the purchase with funds provided by her husband or other family member).

More fundamentally, no payment to Blue Rider in August 2011 could have been for the "purchase" of the Naperville property because, at that point, the Odoms themselves were the nominal owners of the Naperville property. In fact, as the Court has explained above, the property "actually belong[ed] to the government," and the Odoms "possesse[d] only voidable title." *See United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991) (citing "relation-back" provision of 21 U.S.C. § 853(c)). Mrs. Odom does not clearly explicate her theory of how settling a civil lawsuit to protect voidable title to property that the plaintiff sought as a remedy for essentially the same wrongdoing that made the property forfeitable—and the title "voidable"—in the first place could amount to a bona fide purchase for value within the meaning of § 853(n)(6)(B), nor does the Court see any way of fitting such a transaction into that category. *See Lavin*, 942 F.2d at 185-87 (explicating the "bona fide purchaser" provision by way of its roots in commercial law, and concluding that § 853(n)(6)(B) does not protect a petitioner who claims to have acquired its interest in a "'transaction' (for want of a better word) [that did] not qualify as a good-faith purchase for

value under commercial law," because "commerce will not be promoted by facilitating" such transactions).

At times, Mrs. Odom seems to be implicitly arguing that it would be somehow inequitable to order forfeiture of the Naperville property based on Mr. Odom's fraud, when the Odoms have already paid the victim of that fraud $2 million to settle claims arising out of the same misconduct. But this "position is fore-closed by the statutory scheme Congress prescribed," which offers third-party petitioners like Mrs. Odom the two paths of 21 U.S.C. § 853(n)(6)(A) and (B), and no others. *See Guerrero*, 37 F.4th at 1219 (rejecting argument of third-party petitioner based on "general principles of equity and fairness" and looking only to the requirements of § 853(n)(6)(A) and (B)); *see also Lavin*, 942 F.2d at 187.

Mrs. Odom cannot establish that she had her own "legal right, title, or interest in the property" at the time of the offense or that she is a "bona fide purchaser for value." Because she has not come forward with evidence that would permit a reasonable factfinder to find in her favor, nor has she shown that there is any genuine factual dispute requiring a trial as to the government's evidence, the government's motion for summary judgment is granted, and Mrs. Odom's is denied. Accordingly, Mrs. Odom's third-party petition to amend the preliminary order of forfeiture to remove the Naperville property is denied. A final order of forfeiture shall issue separately.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion for summary judgment (*see United States v. Odom*, Case No. 16 CR 192, ECF No. 363 (D. Md. Feb. 24, 2023) and third-party petition (*see id.*, ECF No. 229 (Jun. 18, 2019) are denied. The government's cross-motion (*see id.*, ECF

9

No. 363 (Apr. 14, 2023) is granted. The government shall promptly submit a proposed final order of forfeiture to the Court at Proposed_Order_Alonso@ilnd.uscourts.gov.

**SO ORDERED.**                                    **ENTERED**: January 31, 2024

**HON. JORGE L. ALONSO**
**United States District Judge**